HEARD NOVEMBER TERM, 1877.

CASE No. 636.

ABRAHAM G. JOHNSON AND WIFE, ALICE, JOHN T. NORTHROP AND WIFE, MARY, v. ROBERT Y. HENAGAN, AS ADMINIS- TRATOR *DE BONIS NON CUM TEST. AN.* OF B. K. HENA- GAN, AND AS ADMINISTRATOR OF J. H. HENAGAN, AND A. B. HENAGAN AND S. F. G. HENAGAN.

1. An executor held not liable for having sold in 1863, for confederate money, cotton raised by him on the plantation of testator; the will hav- ing directed the executor to pay the debts out of the crops to be raised.

2. Conclusions of fact drawn by a referee from the conflicting evidence of witnesses examined before him and not overborne by any clear weight of undisputed testimony, nor unfounded in the evidence, sustained.

3. The principles declared upon which an executor's accounts should be stated, in a case where some of the beneficiaries had become entitled to a part of the personalty immediately upon testator's death, and to another part at a subsequent date, and others were devisees of land, upon which the executors were to make crops as a primary fund for the payment of debts, the personalty being next liable, and the land having been sold to pay debts.

4. A purchase by an executor of slaves, a brood mare and other property for the estate, disallowed.

5. An executor charged by the will with the duty of making crops on testa- tor's plantations, is not entitled to a credit on his accounts for a suit of clothes bought for himself.

6. The payment of a counsel fee not supported by facts sufficient to enable the court to judge of its necessity and propriety, disallowed.

7. Accounts rendered by parties dealing with an executor are not, in them- selves, proofs of disbursements; nor are entries in mercantile books, with- out further testimony, proof of payments to laborers, or that such payments covered advances for the production of crops.

8. Amounts paid for the purchase of articles should not be credited on an executor's accounts, unless proven to have been proper for the protection of the personal estate, or necessarily incurred in carrying out the direc- tions of the will.

9. An executor who pays out of his testator's assets a debt due by a legatee, can look only to the distributive share of such legatee for reimbursement.

10. Where an administrator *cum testamento annexo*, ceases to make crops for the payment of debts, upon the lands of testator, under the directions given to the executors by the will, the legatees of the personalty have no claim upon the subsequent rental; but the personal property becomes then subject to division amongst them.

11. The rule for computation of interest on executors' accounts, as laid down in *Livingston* v. *Wells*, 8 *S. C.* 347, approved.

12. Certain legatees brought an action against the executor for an account; the other legatees were all made parties defendant, and one of them died *pendente lite*. *Held*, that the personal representative of such deceased legatee was not a necessary party to the further proceedings. If a proper party, the executor having the power to bring him in, could not object to his absence.

13. An administrator cannot interpose the want of a settlement of his intestate's estate, caused by his own neglect, as an objection to his accounting for another estate, incidentally connected therewith, of which, also, he is administrator.

14. An appeal may be taken from a judgment entered up *pro forma* by appellants, for the purpose of appealing therefrom.

Before SHAW, J., at Marlborough, March Term, 1876.

Governor Barnabas K. Henagan, of Marlborough district, died in 1854, leaving of force a last will and testament, of which John W. Henagan, J. H. Henagan and J. J. Harllee were appointed executors; the two last named qualified, and James H. Henagan, who was a son of testator, was the chief acting executor. The opinion of the court states so much of the will as is necessary to a proper understanding of the points involved in this case.

The testator left him surviving his widow, four sons, James H., Robert Y., Andrew B. and Samuel F. G., and two daughters, Mary and Alice. Mary afterwards intermarried with Abraham G. Johnson, and Alice intermarried with John T. Northrup. The widow of testator died before action brought.

The executors cultivated the lands of testator before the war and made crops, under the directions of the will. They sold the Grove place (devised to R. Y. Henagan) under a power in the will, to pay debts with. When the war commenced, Harllee removed to Arkansas, where he remained until his death in 1866. J. H. Henagan went into the army. R. Y. Henagan took out letters of administration *durante absentia*, early in 1862, and, the executor having been killed in battle in July, 1862, administered *cum testamento annexo de bonis non* on the estate of B. K. Henagan, in May, 1863, and also became administrator of the estate of J. H. Henagan. The heirs-at-law of J. H. Henagan were his surviving brothers and sisters.

R. Y. Henagan then cultivated crops upon the lands of his father's estate until the end of 1867, after which the devisees took possession of the lands and cultivated them. The administrator sold, in 1868, the Creek place devised to him.

J. H. Henagan, executor, sold six negroes of the estate, with which to pay a large and pressing debt. Subsequently he purchased from C. D. Evans, commissioner in equity, other negroes for the estate, which were worked as estate negroes; and he gave a bond for the amount of their purchase money, upon which payments were afterwards made. R. Y. H., after he administered, purchased a brood mare for the estate.

The two daughters of testator, with their husbands, brought this action in May, 1870, against R. Y. Henagan, as administrator *cum testamento annexo* of the estate of B. K. Henagan, and as administrator of the estate of J. H. Henagan, for an account of his administration of the two estates, and A. B. Henagan and S. F. G. Henagan were made parties defendant. Before judgment was obtained, Samuel F. G. Henagan died.

The accounting was taken before D. D. McCall, Esq., to whom, as special referee, it was referred. His report is as follows:

D. D. McCall, to whom it was referred as special referee in the above-stated action, to inquire and report upon the actings and doings of R. Y. Henagan, as administrator *de bonis non* of B. K. Henagan, deceased, with will annexed, would respectfully report:

That during the latter portion of 1870, and also during 1871 and the present year, he has held various references in said action, as will be shown by the testimony taken, which references were for the most part at the instance of the plaintiffs, and related to the crops and expenditures of the plantation known as the "Cannon place" during the years 1863, 1864, and since then up to the present year. The number of references and great amount of testimony taken have been owing in a great measure to the failure of administrator to file with his answer an account current, and from failure to make annual returns for any of the nine years covered by his administration, except 1866, and this return related only to transactions of 1863 and 1864, although made and filed on June 25th, 1866. The referee finds that

the estate has been managed in a reckless and negligent manner from the beginning, by the administrator; that at the time the administrator took charge of estate, it only owed one debt—the bond to W. H. Evans, trustee—and that on this debt only $4000 has been paid by administrator, including the $2000 paid on May 1st, 1873—the day letters of administration were granted to the administrator; while on the other hand large sums were paid out by the administrator upon the debts of J. H. Henagan, for which the estate of B. K. Henagan was in no way responsible; and the result is, that the whole real estate of B. K. Henagan has been sold, and the whole personal property disposed of by the administrator and others, with a heavy judgment still unsettled. The plaintiffs, by their counsel, urged that the seventy bales of cotton sold by the administrator to Johnson & Breeden, on the 11th day of July, 1863, for $13,846.91 (confederate money), should be charged to the administrator as on hand at the close of the war, claiming the conversion of cotton into depreciating confederate currency to be unwarranted. The balance of the cotton not sold by the administrator was saved at the close of the war, and the sale made by the administrator to Johnson & Breeden, viewed by the light of subsequent events, was a very unfortunate one for the estate, not a dollar of the large amount received from this cotton being applied to the debt due by the estate, being refused by the holder of the bond. The referee is disposed to think that the administrator in this sale acted in good faith, and, as he supposed, for the best interest of the estate, and therefore charges him with confederate currency received.

The administrator, in the account current filed by him on the last reference, and also in the return made in 1866, charges himself with fourteen hundred and fifteen bushels corn sold to different persons in the year 1863. There are no dates attached to any of these sales, nor any proven on reference. The referee therefore charges these items in part on March 15th and on November 1st, being governed to some extent by the prices obtained. The same want of dates occurs in regard to sales of corn made in 1864, and referee charges in same manner, and

scales accordingly, although by so doing the price of corn in good money is as low as nine cents per bushel.

The plaintiffs introduced testimony to show that the amount of corn sold during the years 1863 and 1864 greatly exceeded the amount charged; but the evidence was conjectural and uncertain, and the referee has adopted the amount charged in annual return made in 1866.

The referee has, with a great deal of trouble, prepared an account current covering the transactions of said administrator, which is intended as a part of this report, by reference to which will be seen the various items of credit allowed to said administrator. The account of C. Graham, for which the administrator claims credit in 1866, and to which plaintiffs object, the referee allows so much thereof as from the character of the items appears to have been for the plaintiffs or the plantation. The account of E. M. Emanuel, which the administrator claims to have been for the plantation, the referee rejects, except $15, which is allowed for bagging and rope. The items of this account, among which is quite a large one for bagging purchased in the fall of 1865, the estate could have had no use for; and when it is remembered that the administrator says that the items of the account were for the estate, and wishes credit therefor, and at the same time says that the estate for the year 1865 had only from three to five acres in cotton, the referee cannot understand the use the estate would have in November, 1865, for two hundred and seventy yards of bagging and large quantities of rope. For such reasons as this, the amount is not allowed, except as above.

As to the amount of cotton made on the Cannon place in 1866 and 1867, there appears to be considerable difference of opinion. Mr. H. H. Tart, who superintended this plantation in 1866, but did not remain until the crop was prepared for market, says in his testimony that A. B. Henagan reported the cotton made in 1866 at one hundred and seven bales, and in 1867 at one hundred and eleven bales, and that the administrator agreed to these statements, but that he, Tart, did not rely on these reports. This witness, in the opinion of the referee, is one whose veracity cannot be questioned, and who is more intimately acquainted with this place than any one else, having been overseer on it from

1854 to 1859, then in 1861 and 1866. He says that eighty-six bales of cotton were the smallest number ever made on the place within his knowledge, and in going over the crop in the summer of 1867 for the purpose of ascertaining how much it would make, at the request of J. H. Baggett, estimated the cotton at eighty-five bales, and wrote to Baggett accordingly. The administrator, on examination as witness, says that sixty-five bales were made in 1866, which were sent to Baggett, and A. B. Henagan thinks the crop of 1866 sixty or sixty-odd bales, and crop of 1867 about the same.

The administrator says that the crop of 1867 was sixty bales, sold by Baggett and Kirkpatrick. Now, it appears from the testimony of the administrator that the crop of 1866 was five bales more than that of 1867, which, according to the estimate of Mr. Tart of the crop of 1867, would make that of 1866 amount to ninety bales. The administrator, in his testimony, says that all of the items in the estate account of Baggett & Co. were for the estate. In looking over this account the referee finds that on September 20th, 1866, the estate is charged with bill bagging, rope, &c., to amount of $277.64, and on February 2d, 1867, to one bale bagging of five hundred and seventeen yards, amounting to $144.-76. The proof before the referee, as to the number of yards of bagging necessary to pack a bale of cotton, taken in connection with the above testimony of the administrator, would lead to the conclusion that the one hundred and seven bales admitted by administrator to Mr. Tart in 1866 (which is denied by him in his evidence, and also by A. B. Henagan) were really below the correct amount. The referee, in view of all the facts of the case, estimates the crop of 1866 at eighty bales, and charges the administrator accordingly. According to the testimony of administrator, six hundred and forty yards of bagging were purchased for the crop of 1867, which would pack at least one hundred bales cotton, and for this year the referee charges the administrator with seventy bales of cotton. In making up the account of 1867, the referee charges the administrator with interest allowed him by J. H. Baggett & Co. on the account, but which is omitted in the account current submitted by the administrator.

By the will of B. K. Henagan, under which the administrator

acted, the plantation was to be worked and debts paid from pro-
ceeds of crops; but the administrator claims to have ceased
working the plantation for the benefit of the estate after the year
1867, being unable to run same, and charges himself with $300
as rent for 1868, 1869, 1870, and 1871, during which years the
lands, stock, &c., were divided out between himself and brothers
and cultivated in separate crops.  The plantation was not offered
to the highest bidder, nor, in the opinion of the referee, attempted
to be rented to any one, although the administrator in his testi-
mony speaks of offering to rent to N. S. Rogers, who was
examined as a witness in this case, and from whose testimony it
might be inferred had already more lands than he could success-
fully manage, which was no doubt known to the administrator.
The plaintiffs claimed that the entire crops of those years should
be charged to the administrator, and he failing to show that he
was entitled to any credits could not be allowed any.

The testimony of several witnesses examined in this case shows
that the usual rent of land in this county is one-fourth cotton
and one-third of corn; and Mr. Tart, in estimating what pro-
portion of the crops made on this place should be profits after
paying expenses, says that since the war thinks that one-third
of the entire crop would pay the expenses, and that two-thirds
of each crop ought to be clear.  The referee has charged the
administrator with one-third of the crops of lint cotton, and one-
third of corn made on place during these years, for the use of
the plantation, horses, mules, implements, &c., giving to him all
the cotton seed, fodder, peas, oats, &c., made, and at the same
time takes the estimate of cotton from the testimony of adminis-
trator.  The $500 worth of goods claimed by administrator to
have been turned over to plantation about first 1867, the referee
allows, but rejects the amount claimed to have been sold to hands
by store in 1866, on the testimony of Northrop and Tart.  The
referee allows credit for all such items on the account of Baggett
& Co., as he considered were for the benefit of the estate.  Com-
missions are not allowed the administrator except for 1866.

The referee charges the administrator with three head of cattle
given away by A. B. Henagan in 1871, and with the stock of
mules and horses carried from the plantation into Darlington by

the administrator and A. B. Henagan, except the two mules and wagon purchased by A. B. Henagan, and estimates these horses and mules at $500, including the implements, &c., belonging to estate.

The referee finds, that on January 1st, 1872, Robert Y. Henagan, as adminstrator *de bonis non* of B. K. Henagan, deceased, was indebted to said estate, as balance in his hands, in the sum of $22,289.23.

To this report exceptions were taken by the plaintiffs, and also by the defendant, R. Y. Henagan, as follows :

The plaintiffs except to the report of D. D. McCall, Esq., referee, filed September 4th, 1872, on the following grounds :

1. Because the referee has sanctioned the sale of seventy bales of cotton in 1863 for confederate money, whereas it is respectfully submitted that such sale was altogether unwarranted, and that the administrator in making such sale exceeded the limits within which his discretion could lawfully be exercised.

2. Because the referee has ignored the fact which is admitted in R. Y. Henagan's answer and established by the proof, that he was in fact appointed administrator early in 1862, instead of in May, 1863, and has failed to charge said administrator with the crop of 1862.

3. Because the referee has not charged the administrator with the full amount of the crops of corn made in 1863 and 1864— five thousand bushels each year—and has only charged him with the amount which he represents himself to have sold in those years.

4. Because the referee has failed to charge the administrator with the twenty-five bales cotton proved to have been on hand in the spring of 1865, after the passage of Gen. Sherman's army.

5. Because the referee has failed to charge the administrator with the full amount of the cotton crops for the years 1866 and 1867, which, according to the testimony, should have been at least eighty-six bales in each year, and which, according to the admission of the administrator, should have been one hundred and seven bales in 1866, and one hundred and eleven bales in 1867.

6. Because the referee in estimating the amount of the crops for the years subsequent to 1867, has been governed entirely by the testimony of the administrator himself, ignoring the testimony of other and disinterested witnesses.

7. Because the referee failed to charge the administrator with the full value of the stock, farming implements, &c., which he carried off himself and permitted others to carry off from the "Cannon place."

8. Because the referee has failed to charge the administrator with the cotton seed of the crop of 1871.

The following exceptions are made to the report of D. D. McCall, Esq., the special referee in the above-stated case, by the defendant, R. Y. Henagan, administrator:

1. The item of $268 was put in the inventory and appraisement by mistake, and ought not to be charged in the account of the administrator.

2. $11,846.91 of the money received from Johnson & Breeden for cotton, ought to be charged on the 21st, instead of the 11th day of July, 1863.

3. The $850 for the hire of carpenter Sam, and the $135 for the hire of the blacksmith, ought to be charged on January 1st, 1864, instead of the days on which they are charged.

4. The payments made on the bond of J. H. Henagan to C. D. Evans, commissioner, dated April 2d, 1860, which, in 1863, amounted in the aggregate to $5277.13, under the evidence, ought to be allowed as credits.

5. The payments made on notes of J. H. Henagan to W. S. Ellerbee, R. C. Emanuel, Simeon Emanuel, R. C. Hamer, C. Graham, Ambrose & Delaney, J. D. McCulloch, S. Emanuel, ag't, and on the accounts of the same to Harris & Harrell, and on a judgment against the same for $421.32, ought to be allowed as credits to R. Y. Henagan, as administrator of B. K. Henagan.

6. The referee erred in not allowing R. Y. Henagan wages from the time he took charge of the Cannon place, 1861, till the time he took out letters of administration on the estate of his father, in 1863, a period of about two years.

7. The referee erred in charging the administrator with a

thousand bushels of corn, and sixteen thousand pounds of fodder on November 1st, 1864, the evidence being that there was really no sale of the same made, though there were some pledges made to the government for the same.

8. The referee erred in not allowing the administrator in the accounts of 1864 credits for $125, paid by him to M. Iseman for a suit of clothes for himself; for $85 to S. Emanuel, for his sisters, Alice and Mary ; for $300 to J. W. Henagan, for board for Alice and Mary ; for $1500 to R. C. McIntyre, for brood mare for the estate; for $150 paid dentist in Raleigh, for work on Mary Henagan's teeth.

9. The referee erred in not allowing the fee of $1000 paid Gen. W. W. Harllee, in February, 1865.

10. The referee erred in charging R. Y. Henagan, administrator, with three bales of cotton sold by Baggett & Co., on April 21st, 1866 ; and with six of the twenty-one bales of cotton sold by C. Graham on May 24th, 1866, the three and the six out of twenty-one being the cotton of R. Y. Henagan individually, and not the cotton of the estate.

11. The referee erred in not crediting the accounts of the administrator for 1866 with $457.53, the purchases made by J. H. Baggett & Co., in 1866, as appears by their account current made up to March 1st, 1868.

12. The referee erred in not giving the administrator credit for the whole amount paid by him on the account of C. Graham, Edwin Bates & Co., and Emanuel, in 1866, except for the items of cash paid A. B. Henagan.

13. If the administrator is not allowed credit for the amounts paid to Mowry & Co., L. D. Mowry & Co., C. Graham and others, because they were debts of J. H. Henagan and not of B. K. Henagan, it is respectfully submitted that the administrator ought to have credit for all the payments he made for the estate of B. K. Henagan with the money of the estate of S. H. Henegan.

14. The referee erred in not allowing the payments made on the accounts of Neil Alford, Alexander Thomas, P. Epstein, and the one to Francis Murphy for $73.

15. The referee erred in not allowing the administrator credit

for $1024.19, the amount charged in plantation book in 1866 against laborers on plantation; or, if not allowing him that precise amount, he erred in not allowing him credit for one-third of the crop made that year, that being the share of the laborers, and the evidence being that they were paid and that the estate got the whole of the crop.

16. The referee erred in not giving the administrator credit for one hundred and eighty bushels of corn purchased from Fladger in 1867, for $1.40 per bushel; and for fifteen bushels purchased from Hays, in the same year, at $1.50 per bushel, which were used by the estate.

17. The referee erred in not giving the administrator credit for the amounts which he paid H. Tart, overseer's wages for 1866.

18. The referee erred in charging the administrator with $975.06, on account of interest on J. H. Baggett & Co.'s account current.

19. The referee erred in not crediting the account of the administrator for 1867, with so much of the account of J. H. Baggett & Co. for that year as was allowed and paid by sales of cotton during the year, or by money in hand, he having credited the same in 1868.

20. The referee is not supported by the evidence in charging the administrator with a crop of more than sixty-five bales of cotton in 1866, and a crop of more than sixty bales in 1867, the numbers with which the administrator charges himself.

21. It is respectfully submitted that the referee is not sustained by the evidence in concluding that there were more than sixty-two bales made in 1868 on the Cannon place.

22. The referee erred in charging the administrator, in the accounts of 1868, with $6283.14, for the purchase money of the Mill creek plantation: 1st. Because, as administrator *de bonis non* with the will annexed of the estate, he had no legal right to make the sale; and 2d. If he had the authority to sell, he ought only to be charged with the real value of it, which was proved to be $2000 or less; and 3d. If there was enough money in his hands to pay the debts of the estate, or enough has been made since by rents, &c., he had the right to sell the property as his own, as he did do under the advice of counsel.

23. It is respectfully submitted that the evidence does not authorize the referee to conclude that there were three hundred and seventy-five bushels of corn and more than seventy bales of cotton made on the Cannon place in 1866.

24. The evidence does not sustain the referee in charging one-third of the corn and cotton made on the Cannon plantation for rent for the years 1868, 1869, 1870, 1871, and that he only should be charged with the value of the rent as proved.

25. The referee erred in continuing to charge the administrator interest on annual balances after the year 1868, instead of simple interest.

26. The referee erred in charging the rent of the plantation for 1868 in the accounts for 1868, and the same for 1869, 1870 and 1871; and the rent of 1868 ought to be charged in 1869, and so on in all the different years, which is the general rule, and is supported by the evidence in this case.

27. It is respectfully submitted that there can be no decree against the administrator until the personal representative of Samuel F. G. Henagan is before the court.

28. It is respectfully submitted that there can be no decree against R. Y. Henagan, as the administrator of the estate of B. K. Henagan, until there is an accounting on the estate of J. H. Henagan, who was an acting executor of the will of B. K. Henagan, and who was a devisee and legatee under the will of B. K. Henagan, and the rights of his estate and those claiming the same, can be properly arranged in no other way than by closing up his estate first.

29. It is respectfully submitted that the referee ought to have taken down and made a report of all the payments proved to have been made by R. Y. Henagan for the estate of J. H. Henagan and for A. B. Henagan, so they might be deducted from the amounts which he may find to be due to them respectively.

30. It is respectfully submitted, that the referee ought to have made a separate account for the rents and profits of such portion of the Cannon and other property of the estate of B. K. Henagan as were respectively in the possession of R. Y. Henagan, A. B. Henagan, and S. F. G. Henagan, in the years 1868,

1869, 1870 and 1871, so that R. Y. Henagan might have the proper credit for the amounts found against the other brothers.

31. It is respectfully submitted that R. Y. Henagan is, under the provisions of the will of his father, B. K. Henagan, and in consequence of the sale of the Grove plantation for $4000, and the Mill Creek plantation for $6285.14, entitled to the whole balance in his hands, over and above the amount for which the Cannon plantation sold, and the outstanding indebtedness of his late father.

32. It is respectfully submitted that the evidence does not sustain the referee in charging the administrator with $500 for personal property taken off by him from the plantation.

The referee submitted the following report on exceptions:

D. D. McCall, as special referee in the above-stated action, having, on the 4th of September last, filed his report upon the accounts of R. Y. Henagan, as administrator *de bonis non* of B. K. Henagan, deceased, and having been served with exceptions to said report, both by plaintiffs and the defendant, R. Y. Henagan, administrator, would respectfully submit the following report upon said exceptions:

1. As to the exceptions of said plaintiffs, he would overrule them, for the reasons given in his former report.

2. As to the exceptions of the defendant, the administrator, the referee would respectfully report, that as to the first exception there was no testimony or allegation prior to the filing of the exceptions by the defendant, of any mistake in the inventory and appraisement.

As to the second exception, the scaling of the confederate money received for the cotton was made upon the basis indicated as the correct one in said exceptions, although the referee follows the account current of the administrator as to the mere date used.

As to the third exception, the administrator, in his account current, charges himself with said items in 1863, without giving a day or month; and the referee, by scaling same as of the last day of that year, gives to the defendant the most favorable day possible.

As to the three foregoing exceptions, and also as to all the other exceptions of the defendant, the referee would respectfully report that after careful consideration he overrules each of them, for the reasons given in his former report, taken in connection with the testimony submitted.

The Circuit decree on exceptions is as follows :

This case came on to be heard upon exceptions to the report of the referee.

I shall not go behind the order of reference, although invited so to .do by some of the exceptions of the defendant. To the report of the referee the plaintiff filed eight exceptions, all of which are overruled. I would remark, on the second exception, that the complaint stated the date of the administration of the defendant to be in the year 1863 ; the answer of defendant admits simply that he administered, and the inventory is dated June 12th, 1863. I might also add, there was no evidence as to the crop of 1862. To the report of the referee the defendant filed thirty-two exceptions, which I shall consider .out of their order. Some of the exceptions were abandoned at the hearing.

The eighth exception charges error in the report of the referee in not allowing defendant credit for the sum of $1500, the price of a horse purchased by him from McIntyre.

The defendant states in his evidence that this animal was purchased as a brood mare for the estate. There is no evidence which satisfies me that this statement is untrue, or which throws any reasonable doubt on it. He should be allowed credit for the sum of $1500, scaled according to the act.

The ninth exception claims that the defendant should have credit for the sum of $1000, paid as a fee to Gen. Harllee. It is usual to allow administrators and executors credit in their accounts for reasonable counsel fees. There is nothing in this case which takes this from under the usual rule. The defendant should be credited with the amount of $1000, reduced according to the scaling act.

The eleventh exception charges error in not allowing defendant credit for certain amounts paid for the estate to Baggett & Co.

The administrator is charged with the whole cotton crop of

1866. My judgment is, that he should be charged with two-thirds of the crops for the years 1866 and 1867, and he should be credited with the amount paid Baggett & Co. for bagging and ties purchased for the year 1866 ; the amount is $277.64. The defendant should pay for the bacon out of his one-third of the crop.

The twenty-second exception will be considered in connection with the thirty-first.

The twenty-fifth exception charges error in the calculation of interest. The rule, as I understand it, is this: The administrator is to be charged with interest on whatever balance appears against him at the end of each year. I observe a charge for interest in the accounts for 1864 ; the first charge for interest should be in the account for 1865, for the year 1864; the balance against the administrator appearing on the first day of January, 1864, carried interest for that year.

Thirty-first exception claims, in substance, that the administrator, in accounting in this case, is entitled to retain an amount equal to the amount of sales of the Grove and Mill creek plantations. In my judgment, the mention of the Mill creek plantation only leads to unnecessary complication. There should be no charge against the administrator for the amount of the proceeds of Mill creek, for the reason that he held it under the will of the testator, subject only to sale for payment of debts ; and if sold for that purpose, he had a right to re-imbursement out of the personal estate, over and above his distributive share. He paid a portion of the proceeds to Baggett & Co., for the benefit of the estate, and has been credited with that amount. The fact that the sum paid Baggett & Co. for estate was proceeds of sale of Mill creek, is entirely immaterial to this litigation.

The Grove plantation was also devised by testator to defendant, subject to same conditions. It was sold by the executor for the payment of the debts of the estate; and my judgment is, that the defendant, as against the estate in this litigation, is entitled to retain the amount for which the Grove plantation was sold, with interest thereon from the date of the sale.

The other exceptions of the defendant are overruled.

It is ordered and decreed that this case be recommitted to the

referee, for the purpose of making a report according to the principles of this decree.

I have filed herewith an explanatory statement to be taken as a part of this decree.

I think it proper to state that the delay in filing my decree in this case has been occasioned by the very complicated character of the case, and my continued ill health since the hearing.

JOHN T. GREEN.

May 5th, 1873.

The referee afterwards reported as follows:

The above-stated case having been recommitted to the undersigned as referee, for the purpose of making a report in accordance with the principles of the decree of his Honor Judge Green, made in said action—

The said referee would respectfully report, that in adjusting said accounting, as directed by said decree, and allowing the credits thereby directed, he finds the balance in the hands of the said Robert Y. Henagan, as administrator of B. K. Henagan, deceased, on this day, to be $1716.16.

The referee would further report, that the Grove plantation was sold and conveyed by the executors of B. K. Henagan on September 4th, 1857, from which time interest has been computed on the amount realized from said sale.

The referee having computed the explanatory statement, filed by his Honor Judge Green, with his decree, refers to same as an exhibit to this report.

The defendants refused to enter up judgment on this report, when the following order was obtained from Judge Shaw, March 8th, 1876:

The special referee in this action having filed his report of January 10th, 1874, upon the accounts of Robert Y. Henagan, as administrator, in which a certain amount is found against the said administrator and in favor of the plaintiffs, which said amount they allege to be much less than they claim to be justly due and owing by said administrator; and the said plaintiffs having given notice to the defendants that they would apply to

this court for leave to enter up judgment in this action, in accordance with the findings of said referee and the decretal order on which the same is based, with a view to appeal therefrom, the defendants having refused and neglected so to do ; and argument of counsel having been heard for and against said motion : It is, on motion of plaintiffs' counsel, ordered that said final report of the referee be confirmed and made the judgment of this court, without prejudice to the plaintiffs' right to appeal therefrom to the Supreme Court.

Judgment was accordingly entered up by plaintiffs March 18th, 1876.

Both parties filed exceptions to this judgment as follows :

The plaintiffs except to the judgment in this cause rendered, and the rulings of Judge John T. Green in his decretal order of May 5th, 1873, on which the final judgment is based, in the following particulars assigned as error :

1. In that the judge in his decree of May 5th, 1873, erred in overruling the exceptions which the plaintiffs took to the referee's report of September 4th, 1872; and the final judgment in accordance with said decree is erroneous for the reasons set forth in said exceptions, which said exceptions are renewed as to said decree and final judgment.

2. In that said decree of May 5th, 1873, is erroneous in sustaining the 8th, 9th, 11th, 22d, 25th, and 31st exceptions of the defendant, R. Y. Henagan, to the referee's report of September 4th, 1872, which said exceptions, it is submitted, should have been entirely overruled, and the referee sustained in these points, and the final judgment conforming to said decree in this respect is erroneous.

3. In that the explanatory statement accompanying and forming part of said decree and constituting the basis of the final judgment, is erroneous, being contrary to the principles governing the mode of stating the accounts of administrators, in calculating interest on annual balances, especially where annual returns are not made and no regular accounts kept.

4. In that said decree and final judgment should have been

in accordance with the rulings and findings of the referee in his report of September 4th, 1872, modified only in those particulars claimed by the plaintiffs in their exceptions thereto, which said report, corrected upon the basis of said exceptions, should have been made the judgment in the cause, and it was error to have held otherwise.

The defendant, Robert Y. Henagan, excepts to the judgment rendered by Judge A. J. Shaw, on the 18th day of March, 1876, in this, that he gives the plaintiffs judgment upon their own order, and that without any prejudice to their right to appeal from the same; and he also excepts to the rulings of Judge John T. Green, in his decretal order of May 5th, 1873, on which the final judgment is based in the following particulars assigned as errors:

1. In that the judge, in his decree of May 5th, 1873, erred in not sustaining the 27th and 28th exceptions of the defendant, R. Y. Henagan, to the report of the referee of September 4th, 1872, which exceptions are renewed to said decree and final judgment.

2. In that the judge, in his decree of May 5th, 1873, erred in overruling all the exceptions which the defendants took to the referee's report of Sept. 4th, 1872, except the 8th, 9th, 11th, 22d, 25th and 31st, and the final judgment in accordance with said decree, for the reasons assigned in the overruled exceptions; which last-named exceptions are renewed as to said decree and final judgment.

3. In that the judge, in his decree of May 5th, 1873, erred in overruling the whole of the defendant's 8th exception, except the item of $1500 paid R. C. McIntyre for a brood mare; which exception, except so far as was sustained by his Honor, is renewed as to said decree and final judgment.

4. In that the judge, in his decree of May 5th, 1873, erred in overruling the exceptions of the defendant to the report of the referee of Sept. 4th, 1872, except so far only as the exceptions were sustained by the decree; and with that exception they are now renewed.

The plaintiffs and Robert Y. Henagan appealed to the Supreme Court upon the grounds set forth in their several exceptions.

*Mr. J. H. Hudson* for plaintiffs.

*Johnson & Johnson* for defendant.

November 20th, 1878. The opinion of the court was delivered by

WILLARD, C. J. The action is by two of the legatees of B. K. Henagan, for an account against R. Y. Henagan, as administrator *cum testamento annexo* of the original testator, B. K. Henagan, and also as administrator of J. H. Henagan, who was, until his death, sole acting executor under the will of said B. K. Henagan. The interests of the plaintiffs, joined as such with their husbands, and who are styled by the will "Mary and Alice," consisted, under the will, of two undivided one-sixth parts of the personal estate, a portion of which was given to the wife of the testator for life, with remainder to the children ; Mary and Alice took two-sixth parts of the remainder in the personal estate given to the wife for life, and two-sixths of the balance of the personal estate.

The portion of Mary and Alice was given to J. H. Henagan, the sole acting executor, in trust, with remainders over in case either daughter should die, leaving no issue surviving her. The testator devised the "Cannon place" to J. H. Henagan and A. B. Henagan, and the "Glover land" and "Mill creek" places to the defendant, R. Y. Henagan.

The testator directs that his estate, both real and personal, "shall remain undivided until all my debts are paid and satisfied." He also directs that "crops made on the lands shall pay my debts. But that in the event that the proceeds arising from the crops and otherwise are not sufficient, then I desire my executors hereafter named to dispose of a sufficiency of personal property to pay the same ; or, if my executors think best, they are empowered to sell a part or the whole of the lands given to my son, Robert Y. Henagan. If the executors should, in their judgment, dispose of a part or the whole of the lands above described, given to my son, Robert Y. Henagan, then and in that case I desire my son Robert shall be entitled, out of my personal property, over and above his distributive share, to the amount the land may sell for, above specified."

The will contains provisions looking to a certain contingency upon which the proportionate shares of Mary and Alice may be increased out of the amount given to Samuel, one of the testator's sons; but it does not appear that such contingency has happened.

J. H. Henagan, J. W. Henagan and J. J. Harllee were appointed executors.

The complaint prays a general accounting as administrator *cum testamento annexo*, and as administrator of the deceased executor, and that plaintiffs may be paid their proper proportion of the estate.

The complaint alleges the death of the trustee of Mary and Alice, J. H. Henagan, but does not allege the appointment of a trustee in the place of such deceased trustee. The purposes of the trust cannot be satisfied during the lifetime of Mary and Alice, as the remainder over, on the contingency of their dying without issue, needs the support of the trust; the trust was also for their protection against the marital rights of their husbands. No attention appears to have been paid to these facts by either party, and no order appears to have been taken for the appointment of a trustee.

The wife of testator died before action brought, consequently the plaintiffs, Mary and Alice, were entitled, at that time, to one undivided sixth each of the personal property of which the testator died possessed, subject to the payment of the debts of the estate in the manner prescribed by the will.

The decree ascertains a certain sum to be due from the defendant, R. Y. Henagan, as administrator *cum testamento annexo* of B. K. Henagan, and directs payment of this sum among the several parties entitled as legatees or devisees under the will of B. K. Henagan, according to their respective shares. The plaintiffs, and the defendant, R. Y. Henagan, have appealed from the decree. The other defendants have not appealed, consequently their only interest in the appeal relates to supporting the decree as against the appeal of R. Y. Henagan.

The appeals bring to notice many exceptions taken to the report of the referee and the decree of the Circuit Court. In order to understand the interests of the parties excepting and appealing, it will be necessary to state, with some degree of

accuracy, their respective interests under the provisions of the will, and then it will be possible to trace the bearing of the questions raised, by way of exception, in the interests of the respective parties. We shall, in this way, discover what questions are material to be considered, and what are not.

We will first consider the interest of Mary and Alice under the will, as affected by the question raised on the accounting. Their sole interest is, as *cestuis que trust*, to have placed in trust that part of the estate of their testator devised to them through his will. Their only interest, under the will, is in the personal estate left by the testator ; as to part of that personal estate, their interest commenced at the death of the testator, and as to the remaining part, at the death of their mother, the life tenant. The liability of the personal estate, as the primary fund for the payment of debts, is in part disturbed by the will. The realty and personalty are to be kept together until the debts are paid and satisfied. The personalty and realty combined constituted plantation property. The crops to be made upon the lands in the hands of the executors were designated as the primary fund for the payment of the debts of the estate. These crops were to be made by the united employment of that part of the realty and personalty that was available for that purpose. If the crops were insufficient for that purpose, then resort was to be had to the personalty for that purpose.

Authority is given to the executors to sell the " Glover land " and " Mill creek " property, devised to the defendant, R. Y. Henagan ; in which case R. Y. H. is to be compensated therefor out of the personal estate, independent of his distributive share therein. " Mary and Alice " are clearly interested to have the produce of the plantation, over and above its current expenses, applied to the payment of debts, so as to relieve the personalty devised, as far as possible, from contribution to that purpose. If it appears that the crops were insufficient for that purpose, then to the extent of the actual payment of the debts, over and above the amount derived from the crops and applicable thereto, the defendant, R. Y. H., is entitled, as administrator, to be allowed such amount, as against the other of the personalty charged against him. If any debts remain unpaid, he is also

H

entitled to retain, for the purpose of applying to the payment thereof, so much of the amount that may be found chargeable against him, on account of the personalty that came into his hands, as may be necessary for that purpose. It follows that the plaintiffs are entitled to the consideration of all questions raised by their exceptions, as by those of the defendant, R. Y. Henagan, that affect the amount and value of the personalty that came into the hands of J. H. Henagan, as executor, and of the defendant, R. Y. Henagan, as administrator *cum testamento annexo*, and as administrator of J. H. Henagan, the executor, and the disposition of the same; also of such questions as affect the amount and value of the produce of the lands and the application thereof.

To avoid complexity, the questions at issue will be examined as raised by the exceptions to the referee's report. It is said in the decree of Judge Green, that some of the exceptions taken by the defendant, R. Y. Henagan, to the referee's report, were abandoned before him. It is not, however, stated which of them were abandoned, and as there is no other evidence of abandonment in the case, they must, therefore, be considered.

*Plaintiff's exceptions to referee's report.*

1. Objects to the allowance of the referee of a claim made by the administrator for the sale of seventy bales of cotton, produced on the lands subsequent to the death of the testator, for confederate currency. The allowance was proper. The cotton was produced under the authority of the will for the purpose of paying debts. It was a necessary inference that the product was to be sold from time to time to pay current expenses of planting and produce a balance for payment of debts. There was clear implied power to sell. The fact that confederate currency was taken, was an ordinary incident of the transactions of that class at that time. It does not appear that the cotton was sold for less currency than, at its current purchasing rate, represented the market value of the cotton. The *bona fides* of the transaction is sustained by the referee, and there is no ground to disturb his conclusion. *State* v. *Mosely*, 10 *S. C.* 1. The exception was not well taken.

2. This exception must be overruled. There is no proof that letters of administration *cum testamento annexo*, and of the estate of J. H. Henagan, were issued prior to 1863. The complaint does ·not lay the foundation for an account as administrator *durante absentia*.

3, 4, 5, 6 and 8. These exceptions involve a question of fact purely, namely, the amount produced during certain years upon the lands of the testator, appropriate to the payment of debts under the will. The conclusions of the referee are drawn from conflicting evidence, in which questions of the credibility and accuracy of testimony largely enter. Such questions belong peculiarly to the court that tries the issues of fact in the first instance, and involve important inferences of fact. We cannot see that the conclusions of the referee on this subject are over-borne by any clear weight of undisputed testimony, or are unfounded in the evidence. These exceptions are not well taken.

7. This exception is, "because the referee has failed to charge the administrator with the full value of the stock, farming implements, &c., which he carried off himself and permitted others to carry off from the 'Cannon place.'" There has not been such a statement of the account as to enable us to determine what allowance, if any, should be made to the plaintiffs by reason of the loss or disposition of personalty on the Cannon place at the decease of the testator. The principles of the accounting in this respect, should be as follows: The trust account for "Mary and Alice" must be credited with two sixth parts of the value of the personal property, other than that in which testator's wife had a life interest as of the date of testator's death, and of the residue of the personalty on that place, as of the death of the tenant. As this exception only relates to the "Cannon place," the account must be so stated only as it regards the personalty on that place. To this must be added the value of all other personalty chargeable in favor of the plaintiffs, as finally fixed by this decision, taking the report of the referee first made as the basis of computation. From this must be deducted all personal property lost or destroyed by natural causes or unavoidable casualty, without the fault of the administrator; also, the amount, if any, and all · sums paid for the indebtedness of the testator, over and above the amount realized for that purpose out of the crops raised upon

the lands of the testator. . The defendant, R. Y. Henagan, must be allowed, out of the balance, any amount paid on account of the debts of the testator existing at his death, out of the proceeds of the sale of the "Cannon," "Mill creek" and "Glover" places. The Cannon place was devised absolutely to J. H. Henagan and A. B. Henagan, and was not liable to the payment of the debts by the will, except as it should be used for making crops for the estate, and the administrator of J. H. Henagan is entitled to a credit for any moneys derived from the sale of that place, applied to the payment of the debts of the testator. So the Mill creek and Glover places were devised to the defendant, R. Y. Henagan, and he must be credited with any part of the proceeds of the sale of those places that was applied to the payment of the debts of the testator. As the account appears to be taken on different principles, it will have to be restated in this respect; but as to its items, it will only be re-opened to the extent rendered necessary by this decision.

*Defendant, R. Y. Henagan's, exceptions to referee's report.*

1. The item of $268, charged as cash in inventory, is not sufficiently explained to remove the inference from its appearing in the inventory. The inventory is not before us and the conclusion of the referee must stand.

2. The duty of scaling, referred to in this exception, appears, by the referee's report on the exception, to have been the basis of the scaling by him, although entries are made in the account as of different days. The argument of the defendant does not dispute the correctness of this statement made by the referee in this respect and it must stand.

3. The objection to the charge of the hire for a blacksmith and a carpenter in 1863 instead of 1864, is placed by the argument on the sole ground that it is by the custom of the country chargeable on the following January. It must be presumed that the charge was made according to the fact, and that was the correct mode of charging.

4. The amount paid by the administrator for the purchase of slaves was not a proper item of charge. He had no authority

to purchase for the account of the legatees of the personalty by the will, nor had he authority to substitute other property for that devised. If the necessities of planting for the estate could under any circumstances have authorized it, still that fact is not made out. Whether property sold or otherwise lost can be properly accounted for by other similar property acquired to the estate, is a question that cannot arise under this exception which involves merely the question whether debts created by the administrator for the purchase of permanent property can be ranked as debts of the testator, as against the personalty.

5. This exception is in part disposed of by what is said as to purchasers for the estate, under the last preceding exception. As it regards the other portions of this exception, the evidence referred to in support is too vague and indefinite to afford ground for disturbing the referee's conclusions.

6. As the question of the settlement of the defendant, R. Y. Henagan's, account, as administrator *durante absentia,* is not open, the charge for his wages while in charge of the Cannon place, before letters of administration were taken out on the estate of R. K. Henagan *cum testamento annexo,* and on the estate of J. H. Henagan, cannot be considered.

7. This exception depends upon inferential conclusions to be drawn from conflicting testimony, and cannot be allowed, for want of overbearing testimony.

8. The referee properly rejected the demand of the plaintiff for a suit of clothes for himself. If this is intended to cover a claim for personal services, it cannot be so considered, as it is not properly connected with that subject. The evidence claimed as supporting the claim for money paid to S. Emanuel has not been found, possibly owing to the fact that no particular reference to the folio where found was made, as required by the rules of this court. The claim of $300 for the board of Alice and Mary was, probably, a gratuity merely, and, as such, not chargeable. The purchase of a brood mare is already disposed of by what has been held as to that class of purchases; such purchases are not chargeable against the legatees. The testimony as to payment for dentist's work is not referred to by folio, and has not been found. This exception is not well taken.

9. The charge of $1000 paid as counsel fee, is not supported by the facts, sufficient to enable the court to judge of its necessity and propriety.

10. This exception depends on the credibility and accuracy of the testimony of the defendant, R. Y. Henagan. The character of the testimony is such that a view opposite to that taken by the referee, is not a necessary inference. This exception is not well taken.

11. The accounts rendered by parties dealing with the administrator, are not, in themselves, proof of disbursements. This exception is not well taken.

12. The referee was justified in not crediting amounts paid for articles purchased, unless satisfied, by evidence, that they were proper disbursements for the protection of the personal estate, and the cultivation of crops for the benefit of the estate. This exception is not well taken.

13. It must be assumed, upon the testimony and findings of the referee, that the money paid for the debt of J. H. Henagan came from the assets of B. K. Henagan. J. H. Henagan was entitled to a distributive share of the personal estate of B. K. Henagan, and to that share R. Y. Henagan must look for reimbursement. As the object of the present accounting was, among other things, to ascertain the amount of the share of J. H. Henagan, as well as the other legatees, that credit cannot come into the present account. This exception is not well taken.

14. The account of Niel Alford was not proved—it was conjectured merely. No proof was offered that the account of A. Thomas was chargeable to the estate. The account of King and Cassidy was not sufficiently explained. The statement that the account of P. Epstein was for the benefit of the estate, was insufficient as proof, as it does not appear that the benefit was of the nature that could justify expenditure by the administrator. This exception is not well taken.

15. The item of $1024.19 was not sufficiently proved by the mercantile books of Henagan & Northrop; these books required proof. The transactions between the hands and the store of H. & N., are not entitled to be admitted into the account, without additional proof that such transactions cover advances

made for the production of crops for the estate. This exception is not well taken.

16. The statement that corn was purchased for "estate purposes," is insufficient; nor was the statement that corn was "used on the plantation" sufficient, as there may have been other uses for it than such as concerned the case of the stock belonging to the estate and making the crops. This exception is not well taken.

17. The testimony as to payments to Tait, as overseer for 1866, is too indefinite and uncertain to afford ground to disturb the conclusion of the referee. This exception was not well taken.

18 and 19. The account of J. H. Baggett & Co. will have to be restated. The items allowed should be stated in the several years in which the transactions that constituted that account occurred. It does not appear with sufficient clearness what items of the account were allowed. The allowance of interest must be revised accordingly. The administrator must be allowed interest on all items of that account allowed as a credit against interest charged. These exceptions must be sustained to the extent just stated.

20, 21 and 23. The subjects of these exceptions have already been disposed of, as they relate to the quantity of produce, fixed by the referee on disputable testimony—for this reason, the conclusion of the referee cannot be disturbed. These exceptions are not well taken.

22. The legatees are not entitled to be credited with the value of the Mill creek place, as that place was specifically devised, and if sold to pay debts, the amount used for that purpose was to be replaced out of the personalty. This exception was not well taken.

24. The referee erred in charging for the use of the plantation for the years 1868, 1869 and 1871. The plantation, independently of the personalty, was not subject to the claims of the legatees, and its rental could not be charged for the benefit of the legatees of the personalty. The use of the personalty by the administrator, or by others with his assent, in planting in these years, should be compensated to the legatees, on the principle that when the administrator ceased to plant for the estate he

held the personalty for division alone, subject to the usual liability in such cases. The devotion of the lands to cultivation for the relief of the personalty was not absolute, but to some extent dependent on the discretion of the executor during his life; we cannot say that the administrator *cum testamento annexo* was bound indefinitely, as it regards time and circumstances, to continue planting, nor is there a proper foundation in the pleadings and proofs, to charge the administrator *cum testamento annexo*, as for a breach of duty in ceasing to plant for the estate. The account must be reformed in this respect.

25. Interest is improperly charged in the account after 1868. The rule of computation, in such cases, was laid down by this court in the case of *Livingston* v. *Wells, S. C.*, April Term, 1876, and need not be recited. The interest account, subsequent to 1868, must, under this exception, be conformed to that rule.

26. This is substantially disposed of by the conclusion stated under the twenty-fourth exception, calling for a revision of the account as it regards the annual rent charged. The rent for the use of the personalty should be charged in the year in which the property was used.

27. The want of representation in this action, on the part of S. F. G. Henagan, is not material to the stating of the account as affecting the interests of the plaintiffs. If all the proper parties were not before the court, it was within the power of the administrator to cause them to be brought in, and, failing to do so, he can gain no advantage, as against the plaintiffs, from their absence. This exception was not well taken.

28. If the settlement of the estate of J. H. Henagan was material, in order to reach the indebtedness of the administrator of B. K. Henagan, then the administrator should have brought forward his accounts, as such administrator—that accounting being open under the pleadings; and, failing to do so, it must be assumed that such a settlement is unnecessary. The estate of J. H. Henagan is only incidentally concerned in the accounting, as affecting the legatees of B. K. Henagan, and to the extent only of the assets of B. K. Henagan that came into the hands of J. H. Henagan. This exception is not well taken.

29. As it regards the subject of this exception, the referee

appears to have stated the account as fully as the evidence would admit of. The referee was not bound to assume the truth and accuracy of verbal statements made by R. Y. Henagan, not accompanied by proper vouchers, nor can this court make such assumption as against the referee's report. This exception is not well taken.

30. In view of what has already been said as to rent subsequent to 1868, this exception need not be further considered.

31. The principle on which the account should be stated, as it regards the sale of the Grove and Mill creek places, has already been stated, and disposes of all matter that need be considered under this exception.

32. This exception involves the effect of disputable evidence, and affords no ground for disturbing the referee's conclusions. There must, however, be a statement of the amounts chargeable to the administrator on account of personal property of the estate, improperly disposed of and unaccounted for, subject to the limitations herein stated.

It will not be necessary to notice any of the exceptions interposed to the final judgment, except that of the defendant, which seeks to exclude the plaintiffs from reviewing the ground on which the judgment was taken, for the reason that the judgment was entered, in form, by the plaintiffs. The act of entering judgment was formal, merely, and cannot be considered as a waiver of the objection that existed to the decree embodied in that judgment, and which were *in invitum.* The other exceptions are already disposed of.

The judgment and decree of the Circuit Court, so far as it is not in accordance with the general and particular conclusions stated, must be set aside, and the first and final reports of the referee must be modified according hereto, and there must be an account upon the principles above stated, in which all matters finally determined by the decree and report of the referee, and not disturbed hereby, shall stand established as between the plaintiffs and the defendant, R. Y. Henagan; and as against the other defendants, parties to the suit, the account must be opened only to the extent of the matters determined under the appeal

by the defendant, R. Y. Henagan, as affecting defendants made parties by proper proceedings.

There must be provision also made for the ascertainment and payment of the debts, if any still due, provided for by the will, and after the payment of such debts, or provision made therefor, the amount, if any, due the plaintiffs must be ascertained, and a trustee appointed, and a decree taken for them in accordance with the foregoing conclusions, with liberty to the other defendants properly represented before the court, or who may become so represented, to move for such order or decree as may be proper in the premises.

Decree modified.

HASKELL, A. J., and KERSHAW, acting A. J., concurred.